Mark Ogden; AZ Bar No. 017018
mogden@littler.com
Misty Leslie; AZ Bar No. 021187
mleslie@littler.com
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.926.8949

Attorneys for Defendant
DISH NETWORK, LLC

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Melin Flores, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>Dish Network, LLC, a foreign corporation, and John and Jane Doe, individuals,<br><br>        Defendants. | Case No.:  2:19-cv-05293-PHX-ROS<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Dish Network Services, LLC ("DISH") hereby moves the Court for summary judgment on all claims against it by Plaintiff Melin Flores ("Flores") pursuant to Fed. R. Civ. P. 56 and LRCiv. 56.1.

In her Complaint, Flores raises interference and retaliation claims under the Family Medical Leave Act of 1993, 29 U.S.C. §§2601, *et seq*. ("FMLA"), and asserts DISH failed to engage in the interactive process, and then discriminated and retaliated against her because of an alleged disability by terminating her employment in violation the Americans with Disabilities Act of 1990, *see* 42 U.S.C. §§12101, *et seq*. ("ADA"). Flores has no evidence supporting any of her claims against DISH. Flores did not have a medical condition entitling her to FMLA leave while employed at DISH, did not request FMLA leave or provide adequate notice of a need for such leave. Flores was not disabled while employed at DISH, and never requested any accommodation or shared sufficiently detailed information to place

DISH on notice of a need for an accommodation under the ADA.  Furthermore, Flores did not engage in protected activity under the FMLA or ADA.  Flores was terminated because she accumulated attendance points triggering her termination under DISH's attendance policy. Flores can point to no evidence indicating DISH's legitimate, non-discriminatory reason was pretext for unlawful discrimination, or in retaliation for any purported protected activity under the ADA or FMLA. The court should, therefore, grant DISH summary judgment, dismiss Flores' claims, and award DISH its fees and costs.

## MEMORANDUM

## I.    BACKGROUND

Flores was an at-will employee terminated on December 21, 2018, in accordance with DISH's no-fault attendance policy after accumulating 8.5 attendance points. SOF 43. Under DISH's attendance policy, employees receive points for arriving late, leaving early, and unexcused absences. SOF 6. The number of points varies by the nature of the attendance infraction. *Id.* Importantly, attendance infractions covered by federal and state leave laws, including FMLA qualifying leave and ADA accommodations, are not counted as occurrences under the policy. *Id.* When an employee accumulates eight attendance points in a rolling 12-month period, the employee is automatically terminated. *Id.* Employees who want or need leave under FMLA, or an accommodation under the ADA, are directed to contact DISH's leaves department (aka the leaves team). SOF 14. Flores never contacted leaves department. SOF 28 and 42.

At the time of her termination, Flores worked four days per week, Friday through Monday, as a "chat" customer service representative. SOF 2-3. In the 12 months prior to her termination, Flores was late, absent or left early 19 times – the first eight of which resulted in no points because the occurrence was covered by Arizona's paid sick leave law. SOF 34. Flores began accumulating points on August 15, 2018. *Id.*  By September 22, 2018, Flores had accumulated four and one half points, the latest of which were caused by her late arrival because of "traffic or vehicle issues." *Id.* She was counseled for her excessive attendance occurrences on September 23, 2018. *Id.* She continued to accumulate absence points,

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

reaching six and one half points on November 10, 2018. SOF 35. She received a written warning on November 13, 2018, and was specifically warned that further violations "may result in disciplinary action up to and including termination." *Id*.

On December 13, 2018, Flores saw her medical provider after complaining of "back pain." SOF 21. She tested positive for a urinary tract infection ("UTI") for which she was prescribed CIPRO (an antibiotic). *Id*. Her physician did not prescribe leave from work. *Id*. Flores chose not to go to work on December 14, 2018, because she was not "feeling well." SOF 22. She contacted DISH's attendance line and her absence was recorded as "personal." *Id*.

On Saturday, December 15, 2018, and Sunday, December 16, 2018, Flores felt better. SOF 23-24. She worked her full shift, and the quality and quantity of her work was unaffected by her UTI. *Id*.[1] On December 17, 2018, Flores called the attendance line and stated she was going to the doctor to get medical tests. SOF 25. Flores anticipated reporting to work after her appointment, but ultimately decided not to go to work. *Id*. At her December 17, 2018, appointment, Flores' doctor confirmed Flores still had a UTI and prescribed a ten day course of KEFLEX (an antibiotic). SOF 26. Her doctor did not prescribe any time away from work or need for leave. *Id*. Flores expected her UTI to resolve by taking the antibiotic without further medical treatment. *Id*.

Flores' absences on Friday, December 14, 2018 and again on Monday, December 17, 2018, brought her total attendance points to 8.5. SOF 39. On December 18, 2018, Flores' supervisor (aka her "coach"), Brandon Brown, began termination paperwork, which included confirming whether Flores had contacted the leaves department for either FMLA covered leave or an ADA accommodation. SOF 2 and 40. The leaves department confirmed Flores

---

[1] DISH employees' productivity is monitored by the Resource Center. Employees who take time away from active customer engagement manually select "aux" time during which customer engagement was suspended. Employees who take more aux time than is permitted, or who otherwise are not sufficiently engaging with customers, receive reminders or inquiries from the Resource Center. Flores received no such reminders or inquiries from the Resource Center on December 15 or 16, 2018. SOF 12.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

had not contacted them and had no pending claims. SOF 42. Flores reported to work on December 21, 2018, ready, willing, and able to work her full shift. SOF 37. Shortly after her arrival, Brandon Brown brought Flores to a conference room and he, along with Manager Diana Angulo, informed Flores of her termination in accordance with the attendance policy. SOF 43.

On December 31, 2018, ten days after her termination, Flores went to the doctor because of continued pain in her back and side. SOF 45. Her doctor confirmed her UTI had resolved. *Id*. On January 5, 2019, Flores was admitted to the hospital and diagnosed with a renal cyst. SOF 46. By January 24, 2019 – a month after her termination – Flores cyst turned septic and Flores was hospitalized. SOF 47.

## II. FLORES' CLAIMS ARE UNSUPPORTED BY EVIDENCE AND DISH IS ENTITLED TO SUMMARY JUDGMENT

### A. *Summary Judgment Standard.*

Summary judgment is appropriate when the moving party establishes there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A fact is material only if it may affect the outcome under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Liberty Lobby, Inc.*, 477 U.S. at 248. In this regard, a claim has no merit if a defendant shows that at least one element of a cause of action cannot be established. Fed. R. Civ. Proc. 56; *see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In a motion for summary judgment, the moving party is not required to produce evidence showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Rather, the moving party's burden is satisfied by showing an absence of evidence to support the nonmoving party's case. *Id*. The non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quote omitted).

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-4-

1   Bare assertions, without supporting evidence, are not enough to create a genuine issue of
2   material fact and defeat a motion for summary judgment. *Liberty Lobby, Inc.,* 477 U.S at
3   247-48. "If the evidence is merely colorable, or is not significantly probative, summary
4   judgment may be granted." *Liberty Lobby, Inc.*, 477 U.S. at 249-50 (citations omitted).

5         When deciding a motion for summary judgment, the Court must construe all disputed
6   facts in the light most favorable to the non-moving party. *See Ellison v. Robertson*, 357 F.3d
7   1072, 1075 (9th Cir. 2004). However, summary judgment is required "against a party who
8   fails to make a showing sufficient to establish the existence of an element essential to that
9   party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*,
10  477 U.S. at 322 . "A party asserting that a fact cannot be or is genuinely disputed must
11  support that assertion by: . . . citing to particular parts of materials in the record," or by
12  "showing that materials cited do not establish the absence or presence of a genuine dispute,
13  or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.
14  Civ. P. 56(c)(1)(A-B). "To show existence of a 'genuine' issue, [a plaintiff] must present
15  some evidence establishing each element of their claims on which they would bear the
16  burden of proof at trial." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir.
17  1990).  Further, "[a plaintiff] must produce at least some significant probative evidence
18  tending to support the complaint." *Id*. (internal quotations omitted).

19        **B.**   ***DISH Did Not Interfere With Flores' FMLA Rights.***
20        The FMLA prohibits employers from interfering with the exercise or attempted
21  exercise of an employee's right to take FMLA covered medical leave. *See* 29 U.S.C. §
22  2615(a)(1). To make out a *prima facie* case of FMLA interference, Flores must establish that
23  "(1) [she] was eligible for the FMLA's protections, (2) [DISH] was covered by the FMLA,
24  (3) [she] was entitled to leave under the FMLA, (4) [she] provided sufficient notice of his
25  intent to take leave, and (5) [DISH] denied [her] FMLA benefits to which [she] was
26  entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir.2011) (internal quotation
27  marks omitted). Here, Flores has no evidence establishing an FMLA interference claim. She
28  was not entitled to take FMLA leave, did not provide any notice of intent to take leave, and

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-5-

was never denied FMLA benefits. Her claim therefore fails.

>    1.    ***Flores had no serious medical condition for which she needed leave.***

Flores was not entitled to FMLA leave because she did not have a serious health condition, and no condition she had prevented her from performing her job. Under the FMLA, Flores must prove that her UTI was a "serious health condition" that prevented her from performing her job. *See* 29 U.S.C. § 2612(a)(1)(D). She cannot.

A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility, "or involves "continuing treatment by a health care provider." 29 U.S.C. § 2611(11), and 29 C.F.R. §825.113; *see also*, 29 C.F.R. §825.114 (inpatient care means overnight stay or incapacity), and 29 C.F.R. §825.115 (continuing treatment means incapacity in connection with treatment, pregnancy, chronic or permanent conditions, conditions requiring multiple treatments, or absences caused by incapacity). The only medical condition Flores had at the time of her termination was a UTI, which resolved after a course of antibiotics. SOF 26 and 45. Flores was not hospitalized or otherwise provided inpatient care prior to her termination or for her UTI. SOF 21, 25, 45 and 46. Her doctor did not prescribe any leave or work restrictions. *Id*. While she ultimately was prescribed a second course of antibiotics, her UTI nevertheless resolved without further care. SOF *Id*. Further, Flores' UTI did not incapacitate her in any way. "Incapacity" under the FMLA means an "inability to work, attend school or perform other regular daily activities" because of the serious health condition or the treatment for that condition. *See* 29 C.F.R. §825.113(b). Even if Flores' UTI was a "serious health condition," her UTI did not prevent her from performing her job.

Flores concedes she was able to work and perform regular daily activities between December 13, 2018, when her UTI was diagnosed, and December 21, 208, when she was terminated. SOF 23-28. Flores missed work because she was not "feeling well" on December 15, 2018, but worked unimpeded on December 15 and 16. SOF 23-24. While she chose not to report to work following her doctor's visit on December 17, 2018, she admits she was fully capable of working on that day and intended to report to work after her doctor's visit.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-6-

SOF 25. Similarly, during her days off between December 18-20, Flores was fully able to care for herself and perform her regular daily activities (SOF 27) and again reported to duty on December 21, 2018, ready and able to work her full shift. Her doctor neither indicated a need nor prescribed time off work. Flores even concedes she did not believe she needed any leave. SOF 28. Her UTI, while inconvenient and even painful, was not a serious health condition under the FMLA. *See* 29 C.F.R. §825.113(d) ("the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc. are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave"). Because Flores did not have a serious medical condition for which she needed leave, she was not entitled to leave under the FMLA. *See* 29 U.S.C. § 2612(a)(1)(D). DISH is entitled to summary judgment.

### 2.    *Flores never requested or indicted a need for FMLA leave.*

DISH is entitled to summary judgment because Flores never took FMLA leave, and never submitted any request for, or even inquired about, FMLA leave. Leave is only covered by the FMLA when the employee provides the employer with information "sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998). In other words, an employee must notify her employer that she "will be absent under circumstances which indicate the FMLA might apply." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir.2001). Flores did not notify DISH, or provide information to DISH sufficient to reasonably apprise it, that FMLA leave might apply to any of Flores' absences. Flores contends she had back pain beginning in November 2018; however, she admits the pain was intermittent, admits, prior to her UTI diagnosis on December 13, 2018, she attributed her pain to a pulled muscle, and admits the pain did not affect her daily living until <u>after</u> her termination.  SOF 19 and 45. The pain never affected her ability to work and she never spoke to her coach Brandon Brown about it. *Id*. Flores never gave any indication to anyone at DISH she needed or intended to use medical leave, and never told anyone at DISH

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

she had any medical condition for which she may need leave. Flores called off work on December 14 because she was not "feeling well" and on December 17 because she went to the doctor to "get tests" because she was still "having pain." SOF 22 and 25. Calling in "sick," or making general statements of needing to take sick leave, is not a request for medical leave under the FMLA and is not sufficient to put an employer on notice of any need for leave under the FMLA.  *See* 29 C.F.R. §825.302(b) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."); and 29 C.F.R. §825.303(b) ("Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.").

Courts have consistently rejected simply calling in sick as enough to qualify the leave as protected under the FMLA. *See De La Rama v. Illinois Dept. of Human Servs*., 541 F.3d 681, 687 (7th Cir. 2008) ("Calling in sick without providing additional information does not provide sufficient notice under the FMLA."); *Satterfield v. Wal-Mart Stores, Inc.,* 135 F.3d 973, 980 (5th Cir. 1998) (notice from employee's mother that she was "sick" was not sufficient to reasonably apprise the employer of the employee's request to take time off for a serious health condition.); and *Mondonedo v. Frito-Lay, Inc.,* 2012 U.S. Dist. LEXIS 64357, *10, 2012 WL 1632834 (D. MD, May 8, 2012) ("It is well-established that an employee simply calling in 'sick' is insufficient to constitute adequate notice or even trigger the employer's obligation to investigate further.") (citing cases similarly holding). *See also Phinizy v. Pharmacare*, 569 F. Supp. 2d 512, 515 (W.D. Pa. 2008) ("[C]ase law is uniform in recognizing that an interference claim cannot proceed where the notice provided for any particular absence is 'patently insufficient' to inform the employer that it was the result of a medical condition that might qualify for leave.").

The little information Flores did provide was patently insufficient to inform DISH that the leave was the result of a qualifying medical condition. Flores' FMLA interference

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-8-

claim, therefore, fails.[2]

**C.**     ***DISH Did Not Discriminate Against Flores Because of Any Disability or Refuse Any Accommodation Request.***

Flores' ADA claims fail because she was not disabled, did not need an accommodation or ask for one, and suffered no discrimination.

**1.**     ***Flores was not disabled within the meaning of the ADA.***

Flores was never disabled within the meaning of the ADA while employed by DISH. The conditions Flores alleges form the basis of her ADA claim is that she suffered from "chronic and severe back and stomach pain," "Ecoli," "a renal cyst and/or a perinephric abscess," a "hepatic abscess extending from the kidney," a pelvis abscess, and "a urinary tract infection and kidney stones." SOF 49.  However, with the limited exception of a UTI, none of the conditions Flores contends made her disabled existed until <u>after</u> her termination. SOF 19-26. While a UTI may be a "physical impairment,"[3] Flores has presented no evidence that her UTI substantially limited a major life activity at any time prior to her termination. Her UTI – the only condition she had prior to of her termination – she concedes, did not affect her ability to work, prevent her from caring for herself, or otherwise substantially affect any major life activity prior to her termination. SOF 19-28, and 45.  An impairment constitutes a disability only "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(ii).[4] Because Flores was not substantially limited in performing any major life

---

[2] To the extent Flores asserts an FMLA-based claim regarding her termination, she must show that she took or attempted to take medical leave covered by the FMLA (which she has failed to show), and that her use or attempted use of covered medical leave was used against her in an employment decision. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). In this case, Flores' termination was based strictly on the application of the neutral attendance policy without regard to any use or attempted use of FMLA covered leave by Flores. SOF 38-44.

[3] Defined as "[a]ny physiological disorder or condition…affecting one or more body systems." *See* 29 C.F.R. § 1630.2(h)(1).

[4] Any condition Flores may have developed after her termination, and any substantial limitation to a major life activity that such post-termination condition may have caused, is

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-9-

1 activities during the relevant time period, she was not disabled within the meaning of the

2 ADA. DISH is, therefore, entitled to summary judgment.

3      **2.**      **DISH could not have discriminated against Flores because, even if**
                **she was disabled, DISH was unaware.**

4

5      DISH could not have discriminated against Flores because – even if Flores was

6 disabled – neither she nor DISH knew about it until after her termination.

7 > An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation.  While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts.  Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the . . . ADA.

8

9

10

11

12 *Alejandro v. ST Micro Elecs., Inc.,* 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) (internal

13 quotes omitted).  *See also, Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1183 (11th Cir. 2005)

14 (noting that "[d]iscrimination is about actual knowledge, and real intent, not constructive

15 knowledge and assumed intent.") (citation omitted); *Kocsis v. Multi-Care Management, Inc.*,

16 97 F.3d 876, 884 (6th Cir. 1996) (holding that an employer cannot discriminate because of a

17 disability when the employer has no knowledge of it); *Tanner v. Jefferson County Board of*

18 *Education,* 2017 Ky. App. Unpub. LEXIS 384 (Ky. Ct. App. May 26, 2017) (holding that an

19 employer without knowledge of an employee's disability cannot form the requisite intent to

20 discriminate based on that disability).

21      Prior to her termination, Flores had been diagnosed only with a UTI, which resolved

22 through the use of antibiotics. SOF 21, 26 and 45. She had shared with no one at DISH that

23 she had a UTI. At most, she shared that she had general "back pain," and shared with the

24 attendance line that she was going in for "tests" because she had pain. SOF 25 and 37. Such

25 facts were not sufficient to be reasonably interpreted as a disability. *See Alejandro*, 129 F.

26 Supp. at 909 ("Vague or conclusory statements revealing an unspecified incapacity are not

27

28 immaterial to her claims against DISH.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-10-

1    sufficient to put an employer on notice of its obligations under the . . . ADA."). In the

2    absence of any knowledge of Flores' purported disability, no decision by DISH could be

3    based on or be made because of that purported disability. *See Raytheon Co. v. Hernandez*,

4    540 U.S. 44, 54 n. 7 (2003) ("If [the employer] were truly unaware that such a disability

5    existed, it would be impossible for [its] hiring decision to have been based, even in part, on

6    respondent's disability. And, if no part of the hiring decision turned on respondent's status as

7    disabled, he cannot, ipso facto, have been subject to disparate treatment."). Consequently,

8    Flores' discrimination claims fail, and summary judgment should be grated to DISH.

9                    **3.       *Flores never requested, or needed, an accommodation.***

10         As an initial matter, because Flores was not disabled during her employment with

11   DISH, she had no entitlement to an interactive process. *See Becerril v. Pima Cty. Assessor's*

12   *Office*, 587 F.3d 1162, 1164 (9th Cir. 2009) ("To be entitled to the interactive process that

13   leads to a reasonable accommodation, an employee must have a 'disability' within the

14   meaning of the ADA.") (citing 42 U.S.C. § 12112(b)(5)(A)). Even assuming Flores can

15   establish she was disabled and that DISH knew about it, which for the reasons set out above

16   she cannot, Flores has identified no specific accommodation she requested, or was denied.[5]

17         Under the ADA, an employee has the initial duty of informing her employer of a

18   disability or any limitations caused by that disability, and the need for an accommodation.

19   *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), vacated on other grounds

20   by *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). The obligation is on the employee to

21   provide sufficient information to put the employer on notice of the need for accommodation.

22   *See, e.g., Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012).  This means not

23   only notice of a condition, but of a "causal connection between the major life activity that is

24   limited and the accommodation sought." *Id*.; *see also Wood v. Crown Redi–Mix, Inc.,* 339

---

25

26   [5] "[T]here exists no stand-alone claim for failing to engage in the interactive process. Rather,
     discrimination results from denying an available and reasonable accommodation." *Snapp v.*

27   *United Transportation Union,* 889 F.3d 1088, 1095 (9th Cir. 2018). "[F]ailure to engage in
     [the interactive] process is not itself evidence of failure to reasonably accommodate."

28   *Kramer v. Tosco Corp.*, 233 F. App'x 593, 596 (9th Cir. 2007).

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-11-

F.3d 682, 687 (8th Cir. 2003). Here, Flores did not provide DISH any notice of her condition, gave no indication her condition caused in any limitations for which she needed an accommodation, and never sought any accommodation.

Further, nothing about Flores having a UTI suggests the need for a work accommodation. The term "reasonable accommodation" means "[m]odifications or adjustments to the work environment or to the manner or circumstances under which the position . . . is customarily performed . . ." 29 C.F.R. §1630.2(o)(1)(ii).  Flores was diagnosed with her UTI eight days before her termination, during which she missed a single day of work because she did not "feel well," and a single day of work because she chose not to report to work after her doctor's appointment. SOF 22 and 25. She worked unhindered for two of her four shifts and reported for work on December 21, 2018, ready, willing, and able to perform her job. SOF 21-27. Nothing about the circumstances could reasonably implicate the need for any accommodation, and Flores has identified none. Moreover, while leave is an accommodation under the ADA; there is no indication that Flores needed leave as an accommodation. Flores was prescribed antibiotics to treat her UTI. SOF 21 and 26. Her provider did not prescribe time off work. To the contrary, Flores admitted she was fully capable of performing her job, did perform her job, and was ready willing and able to do so at the time of her termination. SOF 19-28.[6] Flores' failure to accommodate claims should be dismissed.

### 4.    DISH had a legitimate, non-discriminatory reason to terminate Flores.

Flores' discrimination claims also fail because DISH had a legitimate, non-discriminatory reason for taking the action it did – it's no fault attendance policy. Even assuming Flores can raise a presumption of discrimination based on disability, (which she cannot), under the *McDonnell Douglas* burden shifting analysis the presumption of intentional discrimination disappears once an employer offers evidence of a legitimate,

---

[6] To the extent Flores seeks to retroactively undo or forgive her points for which her abscesses for which she received attendance points, forgiveness of absence points is not an accommodation under the ADA.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1    nondiscriminatory reason for its actions. *See Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d
2    1080, 1093 (9th Cir. 2001) (applying *McDonnell Douglas* analysis to ADA claims).

3         Under *McDonnel Douglas*, once an employer shows a legitimate, non-discriminatory
4    reason for the employment decision, the plaintiff can only avoid dismissal by demonstrating
5    pretext.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). DISH terminated
6    Flores' employment when she accumulated the number of attendance points in a 12 month
7    period that triggered termination.  SOF 6, 38-39, and 43. Flores accumulated 8.5 attendance
8    points for 11 separate occurrences between August 15, 2018, and December 17, 2018. SOF
9    34-35. Under DISH's attendance policy, employees with eight points are subject to
10   termination.  SOF 6. The termination process was begun on December 18, 2018, and Flores
11   was informed of her termination on her next scheduled work day, December 21, 2018. SOF
12   39-43. DISH has established its legitimate, non-discriminatory reason for Flores'
13   termination.  *See Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985) (holding
14   legally sufficient explanation is all that is required); *Lindsey v. SLT Los Angeles, LLC,* 447
15   F.3d 1138, 1148-49 (9th Cir. 2006) (citation omitted) (explaining that the employer's burden
16   is "one of production, not persuasion, thereby involving no credibility assessment."). Flores
17   can only avoid dismissal of her claims by proving pretext. *See McDonnel Douglas*, 411 U.S.
18   at 802. Evidence of which Flores does not have.

19        To demonstrate pretext, Flores must point to specific and substantial evidence
20   challenging the credibility of the company's motives, beyond the evidence used to establish a
21   *prima facie* case, or demonstrate that DISH's explanation is unworthy of credence.  *See
22   Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *Wallis v. J.R.
23   Simplot Co.,* 26 F.3d 885, 888 (9th Cir. 1994).  In other words, Flores must produce direct or
24   circumstantial evidence demonstrating that "a discriminatory reason more likely than not
25   motivated" the challenged decision or present evidence that the challenged action was due to
26   discriminatory intent. *See Tyler v. Safeway, Inc.*, CV-09-2466-PHX-DGC, 2011 WL
27   2976865, *4 (D. Ariz. July 22, 2011). Mere opinions and beliefs as to DISH's motivation,
28   with no specific or substantial evidence, are not enough to create a genuine issue of material

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-13-

fact on the issue of pretext. *See Crudder v. Peoria Unified Sch. Dist. No. 11,* 468 Fed. Apps. 781, 784 (9th Cir. 2012).  Simply because Plaintiff disagrees with the level of discipline and the fact she was terminated does not make it retaliatory, or establish pretext. Summary judgment is appropriate.

### D.    *Flores' Retaliation Claims Fail Because Flores Engaged In No Protected Activity and Any Actions By DISH Were For Legitimate, Non-Discriminatory Reasons.*

Flores' retaliation claims fail because she cannot establish the elements of her retaliation claims. Under the ADA and the FMLA, retaliation claims require: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *See Coons v. Secy' of U.S. Dept. of Treasury,* 383 F.3d 879, 887 (9th Cir. 2004) (ADA); *Bachelder*, 259 F.3d at 1124 (FMLA). Flores can establish neither protected activity nor causation.

Flores has identified no protected activity under either the FMLA or ADA in which she engaged prior to her termination. While oral complaints may constitute protected activity, the complaint must give the employer "fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation." *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 13 (2011). The complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14. An informal complaint must concern some violation of law. *Id. See also Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009). Here, prior to her termination, Flores made no complaint and expressed no opposition to any DISH policy or practice covered by the ADA or FMLA. Flores, therefore, has no basis for her retaliation claims.

Even assuming Plaintiff engaged in protected activity, of which there is no evidence, her retaliation claim still fails as a matter of law.  A plaintiff making a retaliation claim must establish that her protected activity was a "but for" cause of the alleged adverse action by the

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-14-

employer. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 795 F.3d 1067, 1088 (9th Cir. 2015) (applying but-for causation to ADA); *Newell v. Ariz. Bd. of Regents*, No. CV-18-01903-PHX-JAT, 2020 U.S. Dist. LEXIS 60872, at *1 (D. Ariz. Apr. 7, 2020) (applying but-for causation in FMLA). It is not enough for an employee to show that the protected activity was a "motivating" factor. The standard for the causal link is "but for" causation, a more stringent test requiring proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. To satisfy her burden, Flores must demonstrate her termination would not have occurred "but for" her engaging in protected activity under the ADA or FMLA. Flores has no evidence of causal connection between her termination and any protected activity in which she may have engaged.

Even if Flores could establishes a *prima facie* case of retaliation under either the ADA or FMLA, courts employ the *McDonnell Douglas* burden-shifting framework to analyze retaliation claims on summary judgment. *T.B. ex rel. Brenneise v San Diego Unified Sch. Dist.*, 795 F.3d at 1088; *Newell*, 2020 U.S. Dist. LEXIS 60872, at *24. As discussed in more detail above, DISH has established its legitimate, non-discriminatory reason for terminating Flores' employment. Consequently, to survive summary judgment, Flores must point to specific and substantial evidence of pretext. *Cornwell*, 439 F.3d at 1028. Here, Flores has no evidence of pretext. Flores' retaliation claims fail, and DISH is entitled to summary judgment.

## III.   CONCLUSION

DISH did not interfere with Flores' use or attempted use of FMLA benefits, did not discriminate against Flores because any disability, and did not retaliate against Flores for any activity protected under the FMLA or ADA. Flores was terminated because she accrued the number of attendance points triggering termination under DISH's attendance policy; a legitimate, non-discriminatory reason for her termination. Flores has no evidence establishing any of her claims against DISH, or supporting any contention that its reason for her termination was pretext. DISH is entitled to summary judgment in this matter, and an award against Flores for its fees and costs.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-15-

1

2
RESPECTFULLY SUBMITTED this 20th day of November, 2020.

3 _____

4

5
/s/ Misty Leslie
Mark Ogden

6
Misty L. Leslie
LITTLER MENDELSON, P.C.

7
*Attorneys for Defendant*

8
I hereby certify that I electronically

9
transmitted the attached document to the
clerk's Office using the CM/ECF System for

10
filing and transmittal of a Notice of
Electronic Filing to the following CM/ECF

11
registrants, and mailed a copy of same to the
following if non-registrants, this 20th day of

12
November, 2020.

13
Troy P. Foster
THE FOSTER GROUP, PLLC

14
902 West McDowell Rd.
Phoenix, AZ 85007

15
tfoster@thefosterlaw.com
*Attorney for Plaintiff*

16

17
s/ Stephany Mitchell

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600