Mark Ogden; AZ Bar No. 017018
mogden@litler.com
Misty Leslie; AZ Bar No. 021187
mleslie@littler.com
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.926.8949

Attorneys for Defendant
DISH NETWORK, LLC

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Melin Flores, an individual,<br><br>Flores,<br><br>vs.<br><br>Dish Network, LLC, a foreign corporation, and John and Jane Doe, individuals,<br><br>Defendants. | Case No.: 2:19-cv-05293-PHX-ROS<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Dish Network Services, LLC ("DISH") opposes Plaintiff Melin Flores' ("Flores") Motion for Summary Judgment ("Flores' Motion"). Flores' Motion (as with all of her claims in this case) attempts to establish liability by imputing knowledge to DISH of a medical condition that manifested more than two weeks <u>after</u> her termination. Flores did not have a serious health condition during her DISH employment, and nothing in the information Flores shared with DISH about any condition she did have during her employment reasonably indicated that any of her absences were or should have been covered by the FMLA. DISH in no way interfered with Flores' FMLA rights, and Flores cannot establish the elements of her an FMLA claim. Her motion for summary judgment should be denied.

/ / /

/ / /

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

**MEMORANDUM**

Flores asserts she is entitled to summary judgment on her FMLA claims because: 1) there is no dispute that she was 'eligible'; 2) there is no dispute she was fired for absences, and, 3) "notice is notice." Flores' Motion at 1-2. Flores misstates the elements of her FMLA interference claim, and improperly attempts to oversimplify the issues to distract from the lack of evidence supporting her FMLA interference. Her strategy fails.

To make out a *prima facie* case of FMLA interference, Flores must establish DISH was covered by the FMLA; she was eligible for FMLA leave; she was entitled to FMLA leave; she provided DISH sufficient notice of her need to take leave; and DISH denied her the FMLA benefits to which she was entitled. See *29 U.S.C. §2615(a); see generally Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) (discussing interference claims). "The 'FMLA is not implicated and does not protect an employee against disciplinary action based upon []absences' if those absences are not taken for one of the reasons enumerated in the Act." *Bachelder*, 259 F.3d at 1125. In this case, Flores was not entitled to take FMLA leave because she did not have a serious health condition during her employment, and failed to provide adequate notice that her absences may have been covered by the FMLA. Her interference claim therefore fails, and her Motion should be denied.

**I.     FLORES HAD NO SERIOUS HEALTH CONDITION**

An absence from work is protected by the FMLA only when it is caused by a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). A "serious health condition" under the FMLA means "an illness, injury, impairment or physical or mental condition" involving either: a) "inpatient care as defined in § 825.114;" or b) "continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. §825.113. The only "illness, injury, impairment or physical or mental condition" Flores had during her employment at DISH was a Urinary Tract Infection ("UTI") with which she was diagnosed on December 13, 2018. Doc. 53, CSOF 58, 62, and 68. Unquestionably, Flores received no inpatient care during her DISH employment. *Id*.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

Equally clear is Flores' failure to establish she received "continuing treatment by a health care provider as defined in § 825.115." "Continuing treatment" is broken down into five categories: a) treatment and incapacity for more than three consecutive days; b) pregnancy and personal care; c) chronic conditions; d) permanent or long-term conditions; and e) conditions requiring multiple treatments involving restorative surgery or would likely result in more than three consecutive days of incapacity if untreated. See 29 C.F.R. §825.115 (a) through (e). Flores' condition, and any treatment she had, was unrelated to pregnancy, a chronic condition, or a permanent or long-term condition, did not involve restorative surgery, and resolved with treatment. Doc. 53, CSOF 58, 62, and 68. Thus, Flores' UTI can only be a serious health condition if it involved treatment **and** incapacity "for **more** than three consecutive, full calendar days." *See* 29 C.F.R. §825.115(a) (emphasis added).[1] It did not.

First, in her Motion and associated declaration, Flores contends she was "incapacitated" because on December 12 and 13 "the pain from [her] condition would have prevented [her] from performing [her] job duties" and that she "could not perform [her] job duties on December 14." Flores Motion at 5-7; Doc. 47-1, Exhibit 3, ¶3.  According to Flores's declaration, she was or would have been unable to perform the duties of her job for – at most - three consecutive days. *Id*. However, to be a "serious health condition" under the FMLA, an employee must be incapacitated "for **more** than three consecutive, full calendar days." *See* 29 C.F.R. §825.115(a) (emphasis added). By her own admission, her period of incapacity was insufficient. *See e.g., Nagy v. W. All. Bank,* No. 2:16-CV-2095 JCM (GWF), 2018 U.S. Dist. LEXIS 104731, at *11 (D. Nev. June 22, 2018) (holding plaintiff not entitled to FMLA leave where unable to produce evidence of an inability to work for more than three calendar days); *Nelson v. Fiskars Brands,* No. 3:14-cv-00685-SB, 2015 U.S. Dist. LEXIS 124328, at *36 (D. Or. July 10, 2015) (holding similarly); *Carter v. Rental Unif. Serv. of Culpeper, Inc.*, 977 F. Supp. 753, 760 (W.D. Va. 1997) ("As a matter of law, an illness that

---

[1] Incapacity is defined as an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R §113(b).

incapacitates an individual for only ... the two-day period the doctor advised [the employee] to take off from work, is not covered by the FMLA.").

Second, Flores has presented no evidence corroborating her self-serving declaration that her condition "would have prevented [her] from performing [her] job duties" on December 12 and 13. *See* Doc. 47-1, Exhibit 3, ¶3. Nothing in her medical records from either her December 14 or December 17 doctor visits indicates Flores needed time off work, or needed any leave from work because of her UTI. In fact, nothing in her medical records indicates or supports her contention that she was "incapacitated" at any time during her DISH employment. Flores' self-serving testimony, standing alone, is insufficient to prove incapacity under the FMLA. *See Nagy,* 2018 U.S. Dist. LEXIS 104731, at *11 (uncorroborated self-serving testimony not enough to establish inability to work for more than three calendar days); *Nelson v. Fiskars Brands*, No. 3:14-cv-00685-SB, 2015 U.S. Dist. LEXIS 124328, at *22-23 (D. Or. July 10, 2015); *see also Schaar v. Lehigh Valley Health Servs. Inc.*, 598 F.3d 156 (3rd Cir. 2010) (holding that some medical evidence is necessary to show that the incapacitation was "due to" the serious health condition.); *Culpepper v. BlueCross BlueShield of Tenn.*, 321 Fed.Appx. 491, 496–97 (6th Cir. 2009) (holding that the plaintiff's "own subjective testimony that she was too sore from surgery to work" was insufficient to establish that her absences were covered by the FMLA where her medical certification stated that she would need to be absent from work for two episodes of incapacity lasting three days each); *Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 591 (7th Cir.2008) (holding that some medical evidence is necessary to establish a serious health condition ); *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1194-95 (8th Cir. 2000) (affirming judgment as a matter of law against employee who provided no medical evidence showing that he was incapacitated for more than three days).

Third, Flores' self-serving uncorroborated declaration should be given no credence because it contradicts her deposition testimony. *See Conyers v. Roddy*, No. 20-55143, 2020 U.S. App. LEXIS 37387, at *2 (9th Cir. Nov. 30, 2020) ("'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-4-

deposition testimony.'" (quoting *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *see also Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) (A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (holding that no genuine issue exists when the only evidence presented is uncorroborated and self-serving testimony). During her deposition, Flores testified she had intermittent pain that never affected her ability to work, never bothered her enough that she felt like she needed to talk to her supervisor/coach about it; and did not affect her ability to care for herself until after her termination. Doc. 53, CSOF 57 and 68. Flores' declaration that she "would not have been able to work" on December 12 or 13 is completely inconsistent with her deposition testimony, and fails to establish the incapacity her FMLA interference claim requires.

Flores' repeated attempt to cast her two pre-termination absences as occurring "in the midst of obtaining a life-changing and critical diagnosis," Flores' Motion at 2, is farcical. Flores had a UTI – which resolved after a course of antibiotics. Doc. 53, CSOF 58, 60, 68, and 69. After her termination, she developed a cyst and was hospitalized for an infection. Doc. 53, CSOF, 68-71. Medical conditions and hospitalizations that occurred <u>after</u> her termination do not retroactively bring her December 14 and 17 absences within FMLA coverage. There is no evidence that her cyst or subsequent infection was caused by or connected to her UTI. And, even if her December 2018 UTI was connected to the conditions she later developed in January 2019, Flores did not have any knowledge that such future complications or hospitalization would occur. Flores future medical conditions were simply not foreseeable at the time DISH terminated her employment. Consequently, she cannot establish that during her employment at DISH she had a "serious health condition" under the FMLA and her interference claim fails. *See* 29 C.F.R. §825.113.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

## II.   FLORES GAVE INSUFFICIENT NOTICE OF ANY SERIOUS HEALTH CONDITION

Flores' FMLA interference claim also fails because she did not notify DISH that she was or would be absent "under circumstances which indicate the FMLA might apply." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir.2001). Contrary to Flores' assertion, at 2, that "notice is notice;" notice that you will not report to work is not notice of your need to be absent <u>because of</u> a serious health condition under the FMLA. To be sufficient under the FMLA, the notice must be substantively adequate, timely, and consistent with the employer's proscribed procedure. See 29 C.F.R. §825.302 and 303. Flores' notice fails on all three.

Flores' notice was substantively inadequate. To succeed on her claim, Flores must prove she provided information sufficient to reasonably apprise DISH that her absences were due to a serious health condition. *See Marquez v. Glendale Union High Sch. Dist.,* No. CV-16-03351-PHX-JAT, 2018 U.S. Dist. LEXIS 173343, at *71-72 (D. Ariz. Oct. 9, 2018) ("When an employee requests leave under the FMLA, the employer must be made aware that the absence is due to a serious illness so that the employer can distinguish it from ordinary sick-days."); *see also Hayduk v. City of Johnstown*, 580 F.Supp.2d 429, 456 (W.D. Pa. 2008) ("The employee must state the reason for the leave with some specificity; since most requested leaves do not qualify under the FMLA to hold otherwise 'would be to place a substantial and largely wasted investigative burden on employers.'") (quoting *Aubuchon v. Knauf Fiberglass GMBH*, 359 F.3d 950, 951-52 (7th Cir.2004)).

The information Flores provided DISH is far from the "abundant, repetitive, and fulsome" notice Flores claims. See Motion at 8. Rather, as Flores concedes, the only information Flores conveyed to DISH was that she was "ill," "sick," had "pain," and had been or was going to the doctor. See Motion at 9. Such vague references and generalized descriptions are insufficient as a matter of law. *See De La Rama v. Illinois Dept. of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) ("Calling in sick without providing additional information does not provide sufficient notice under the FMLA."); *Satterfield v. Wal-Mart*

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

*Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (notice from employee's mother that she was "sick" was not sufficient to reasonably apprise the employer of the employee's request to take time off for a serious health condition.); *Mondonedo v. Frito-Lay, Inc.*, 2012 U.S. Dist. LEXIS 64357, *10, 2012 WL 1632834 (D. MD, May 8, 2012) ("It is well-established that an employee simply calling in 'sick' is insufficient to constitute adequate notice or even trigger the employer's obligation to investigate further." And citing cases similarly holding); and *Phinizy v. Pharmacare*, 569 F. Supp. 2d 512, 515 (W.D. Pa. 2008) ("[C]ase law is uniform in recognizing that an interference claim cannot proceed where the notice provided for any particular absence is 'patently insufficient' to inform the employer that it was the result of a medical condition that might qualify for leave.").

Importantly, when Flores returned to work after calling off on December 14, 2018, "because she wasn't feeling well," Flores told her supervisor she was "feeling better" and **did not** describe any recent incapacity, and did not share her UTI diagnosis. Further, Flores admits she never told Brown she believed any medical condition she had, or thought she had, would affect her ability to work, or that it might cause her to miss work. Doc. 53, CSOF 59. DISH knew only that Flores was absent from work for two non-consecutive days – with no information reasonably adequate to indicate the absences were because of any illness or condition that might be covered by the FMLA. *See Nelson v. Fiskars Brands*, No. 3:14-cv-00685-SB, 2015 U.S. Dist. LEXIS 124328, at *36-37 (D. Or. July 10, 2015) ("In giving notice of intent to take FMLA leave, '[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.'"). *See also Sarnowski v. Air Brooke Limousine, Inc.,* 510 F.3d 398, 402 (3d Cir. 2007) ("[t]he critical question is how the information conveyed to the employer is reasonably interpreted."); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004) ("[T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job."); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-7-

("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.").

Flores makes much of her providing copies of her doctor's records evidencing her UTI diagnosis at her termination meeting on December 21, 2018. However, nothing in those records supports her contention that her UTI was a serious medical condition, or that she had been incapacitated for more than three days. The records do not explain why she was absent, do not indicate her UTI necessitated she be off work, and do not indicate she had been or would be unable to work or care for herself for more than three days because of her UTI. The records were insufficient to reasonably put DISH on notice that she suffered a serious health condition. *See Lackey v. Jackson Cty.*, 104 F. App"x 483, 489 (6th Cir. 2004) (holding "ambiguous" doctors' notes which did not explain the reasons for plaintiff's absence from work or state that plaintiff was incapacitated were insufficient to prove that plaintiff suffered a serious health condition).

Flores, unconvincingly, represents that her presentation of a doctor's note indicating she had a UTI should have put DISH on notice that she was going to be hospitalized in January 2019 for a cyst and infection. She has absolutely no evidence showing any connection between her December 2018 UTI and any condition she developed in January 2019. Flores admits she has no understanding of when the cyst formed and concedes she could not have placed DISH on notice of a condition of which she was unaware. Doc. 53. CSOF 71. It defies logic that DISH should have been aware of Flores' medical condition before she was even aware of it, much less have affirmatively granted her leave when none of her doctors – or plaintiff herself – indicated she needed it. No reasonable juror could conclude Flores adequately notified DISH that she was or would be absent under circumstances indicating the FMLA might apply. *See Nelson*, 2015 U.S. Dist. LEXIS 124328, at *38. Flores' FMLA interference claim fails because the content of her notice was deficient.

Flores' notice was also untimely. When the need for leave is not foreseeable, "an

1  employee must provide notice to the employer as soon as practicable under the facts and
2  circumstances of the particular case." See 29 C.F.R. §303(a).  Flores was absent on
3  December 14, 2018, but worked her full shift on December 15 and December 16, 2018. She
4  did not, however, provide notice to DISH that the FMLA may apply to her December 14
5  absence on either of those days. She admittedly spoke to her supervisor on December 15,
6  and, when he inquired as to how Flores was doing, Flores simply stated she was "feeling
7  better." Doc. 53, CSOF 59. She was absent again on December 17, and again, made no
8  attempt to notify DISH that the FMLA may apply to that absence during the subsequent
9  three days. Then, on December 21, 2018, a week after her first absence and only when she
10 was being informed of her termination for exceeding the maximum number of attendance
11 points, Flores disclose for the first time her UTI diagnosis. However, as noted above, nothing
12 in her doctor's notes indicate she missed work or needed to miss work because of her UTI,
13 and Flores said nothing about any period of incapacity. Flores did not provide notice "as
14 soon as practicable under the circumstances." See 29 C.F.R. §303(a).

   Flores also failed to "comply with the employer's usual and customary notice and
15 procedural requirements for requesting leave." 29 CFR §825.303(c). DISH used the leaves
16 team/department to process leave requests and evaluate whether any absence was covered by
17 the FMLA. Doc. 53, CSOF 48. The leaves team was well advertised through trainings,
18 posters, the employee portal, and the distribution of leaves team contact cards. Doc. 53,
19 CSOF 16. Employees (including Flores) were regularly encouraged to contact the leaves
20 team to maximize excused absences, especially when they had abnormally high attendance
21 points, or indicated they may need to miss work for medical reasons. Doc. 53, CSOF 50 and
22 52. Flores was directed to the leaves team and provided with the team's contact card on at
23 least two separate occasions. Doc. 53, CSOF 56. Flores never contacted the leaves team,
24 however. [2].

---

[2] Flores asserts, at 10, n. 4, that the fact that Flores never requested FMLA leave must mean
that she did not know about FMLA. Given the amount of notice and constant discussion
about attendance, her "not knowing" is highly unlikely (and extremely self-serving). Flores

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-9-

None of the cases Flores cites support her contention that the notice she provided DISH was adequate. For example, Flores cites *Escriba v. Foster Poultry Farms, Inc.,* 743 F.3d 1236 (9th Cir. 2014), ostensibly for the proposition that an employer may not disallow or delay an employee's use of FMLA leave for not complying with an internal procedure. Motion at 8 and at 9, n. 2. However, *Escriba* does not so hold. The plaintiff in *Escriba* met with her supervisor before taking time off to care for her ailing father in Guatemala. At issue was whether the employee's notification that the reason for her time away was to care for her ailing father automatically triggered FMLA protections for her leave even though she specifically chose to use paid vacation and declined to submit an FMLA leave request through human resources. *Id.* at 1240. When the plaintiff did not return to work after her vacation expired, and she did not contact her employer about FMLA leave, she was terminated. In upholding the jury verdict in favor of the employer, the 9th Circuit first affirmed that an employee may decline to use FMLA rights (preserving protected leave for future use) (*Id.* at 1243-44) and then rejected the plaintiff employee's assertion that "simply mentioning an FMLA-qualifying reason for an absence triggers the Act's protections." (*Id.* at 1247). Nothing in *Escriba's* facts are similar to the situation in this case, nor is the holding as portrayed by Flores. Furthermore, unlike the plaintiff in *Escriba* (who took time off to care for her ailing father), Flores' absences were not due to any reason that would qualify under the FMLA. *Escriba* simply does not apply.

Similarly, Flores' citation to *Nolan v. Hypercom Mfg. Res.,* 2001 U.S. Dist. LEXIS 14821 (D. Ariz. Mar. 22, 2001) is misplaced. Flores cites *Nolan* for the proposition that "all prior absences that were necessary for the evaluation and treatment of the condition may be protected, even if they were not protected at the time they occurred." Motion at 7. However, in *Nolan*, the court held the regulations prohibiting an employer's retroactive designation of leave as FMLA leave were invalid, and then granted the employer summary judgment

---

not contacting the leaves team just as easily means she knew her condition was not covered, or that she disregarded (or was careless about) the number of absence points she accumulated.

because – with that retroactive designation – the employee had exhausted FMLA leave. *Nolan*, 2001 U.S. Dist. LEXIS 14821, at *22. *Nolan* is inapposite to this case.

Likewise, Flores' reliance on *Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x, 645 (9th Cir. 2016) for the proposition that "notice to the employer may be minimal" to trigger FMLA protections, at 8, misses the mark. In *Kinross*, the court dismissed the plaintiff employee's FMLA interference claim because the plaintiff failed to establish he was eligible for FMLA benefits since he failed to respond to the employer's request for information. *Id*. at 647. Unlike Flores, the employee plaintiff in *Kinross* notified his employer that he had been hospitalized for four days. *Id*. Here, Flores was not hospitalized during her DISH employment, did not notify DISH of any purported "incapacity," and even if she had, her alleged incapacity (which is supported only by her self-serving declaration and is inconsistent with her deposition testimony) was for three days, not the four required for the FMLA to apply. In other words, the information Flores provided to DISH was not similar to the minimal information the plaintiff employee provided in *Kinross*.

Finally, even if the information Flores provided to DISH triggered its obligation to inquire further (which it did not), Flores would nevertheless have been terminated because her UTI was not a serious health condition under the FMLA. The uncontroverted evidence demonstrates that had Flores provided information to DISH sufficient to raise the possibility that her absences were covered by the FMLA, DISH would have paused the termination process pending a determination by the leaves department as to whether the absences were covered by the FMLA. Doc. 53, CSOF 54 and 64. And only if the leaves team determined that the absences were covered by the FMLA would the absences have been excused. Doc. 53, CSOF 45. Flores falsely portrays a temporary reprieve from the termination process as a fait accompli. See Motion at 11 ("Had Defendant considered Ms. Flores' explanation and/or medical records that it had requested at the time of her termination, Ms. Flores' absences would have been excused, and she would have remained employed."). There is no evidence that the leaves team would have approved FMLA leave for either absence. To the contrary, Flores has no medical evidence supporting her contention that her UTI was a serious health

condition under the FMLA, or that her UTI incapacitated her for more than three full calendar days. Consequently, even had DISH paused the termination process, the result would have been the same.

### III. FLORES IS NOT ENTITLED TO LIQUIDATED DAMAGES

Liquidated damages are not available to Flores because she has failed to establish her FMLA interference claim as a matter of law, and the uncontroverted evidence establishes DISH acted reasonably and in good faith when it terminated her employment for exceeding the number of attendance points under DISH's neutral attendance policy. See 29 U.S.C. § 2617(a)(1)(A)(iii). As discussed above, and in Defendant's Motion for Summary Judgment (Doc. 48), Plaintiff fails to present evidence from which a reasonable jury could conclude DISH interfered with Flores' FMLA rights or retaliated against her in any way. Moreover, unrefuted evidence demonstrates that DISH acted reasonably and in good faith. The cases cited by Flores in support of her liquidated damages claim do not support her contention that DISH acted in bad faith, or that liquidated damage are justified in this case. For example, in *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 15 (1st Cir. 2012) the court upheld the lower courts conclusion that the employer acted in good faith and properly denied liquidated damages. *Id.* at 15. Flores' reliance on *Thom v. American Standard, Inc.*, 666 F.3d 968, 977-78 (6th Cir. 2012) is similarly unavailing.

In *Thom*, the court noted, "[t]o establish good faith under the FMLA, a defendant must show that 'it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it.'" *Thom*, 666 F. 3d at 977 (6th Cir. 2012). The court in *Thom* upheld liquidated damages because the employer, in that case, changed the way it calculated the amount of FMLA taken by the employee to a rolling calendar basis after the plaintiff's termination so that the employer could justify not extending an already approved leave, and justify the termination based on "exhaustion of benefits." *Id*. None of the facts in *Thom* are similar to the case at bar.

Here, DISH's attendance policy is neutral and does not ascribe any points for

absences covered by the FMLA or other leave laws. Doc. 53, CSOF 45. Flores was given access to her attendance in real-time and her supervisor met with her weekly about attendance. CSOF 47 and 55. DISH used a specialized team (the leaves department/team) to evaluate whether any absence was covered by the FMLA. Doc. 53, CSOF 48. DISH advertised its use of a leaves team during on-boarding/new-hire training and training videos, as well as through a variety of methods including numerous posters throughout the building, employee's online portal, distribution of leaves team contact cards. Doc. 53, CSOF 50, 52 and 56. Before terminating Flores, DISH confirmed that she had not contacted the leaves team and had no pending claims or leave requests. Doc. 53, CSOF 65. These facts, especially in light of Flores' admissions that she never told her supervisor that her pain affected her ability to work (Doc. 53, CSOF 57), did not share any alleged incapacity that her pain caused, and did not share her UTI diagnosis until after the termination had been approved (Doc. 53, CSOF 67), demonstrate DISH's reasonableness and good faith conduct. Liquidated damages are not appropriate in this case.

## IV. CONCLUSION

Flores' Motion should be denied because she fails to establish a *prima facie* case of FMLA interference. During her employment with DISH, Flores' only medical condition was a UTI, which is not a serious health condition under the FMLA. Flores presents no evidence that she was incapacitated for more than three full calendar days and the only evidence that she was incapacitated at all during her employment is her self-serving declaration – which is unsupported and conflicts with her deposition testimony. Flores also fails to establish that she gave DISH adequate notice under the FMLA that either her December 14 or December 17 absences were or may have been covered by the FMLA. The only information Flores provided was vague generalities. No reasonable juror could conclude that the information Flores provided DISH was adequate notice under the FMLA. Flores' motion for summary judgment should be denied.

/ / /

1  RESPECTFULLY SUBMITTED this 4th day of January, 2021.

*/s/ Misty Leslie*
Mark Ogden
Misty L. Leslie
LITTLER MENDELSON, P.C.
*Attorneys for Defendant*

I hereby certify that I electronically transmitted the attached document to the clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 4th day of January, 2021.

Troy P. Foster
THE FOSTER GROUP, PLLC
902 West McDowell Rd.
Phoenix, AZ 85007
tfoster@thefosterlaw.com
*Attorney for Flores*

*s/ Stephany Mitchell*

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600