Mark Ogden; AZ Bar No. 017018
mogden@litler.com
Misty Leslie; AZ Bar No. 021187
mleslie@littler.com
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.926.8949

Attorneys for Defendant
DISH NETWORK, LLC

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Melin Flores, an individual,<br><br>Flores,<br><br>vs.<br><br>Dish Network, LLC, a foreign corporation, and John and Jane Doe, individuals,<br><br>Defendants. | Case No.: 2:19-cv-05293-PHX-ROS<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendant Dish Network Services, LLC ("DISH") replies in support if its motion for summary judgment (Doc. 48) ("DISH's Motion").

Plaintiff has no evidence establishing the *prima facie* case for any of her claims against DISH. At the time of her termination Flores had a urinary tract infection ("UTI"), and nothing else, a condition that is neither a serious medical condition under the FMLA nor a disability under the ADA. Even if her condition was a serious medical condition or disability (which it was not), Flores did not provide enough details to DISH for a reasonable person to recognize that she needed leave under the FMLA because of an inability to perform her job (29 U.S.C. § 2612(a)(1)(D)), or needed an accommodation under the ADA because such was necessary to perform the essential functions of her job. (42 U.S.C. § 12111(8-9); 29 C.F.R. §1630.1 (m)-(o)). Finally, Flores has failed to establish she engaged in any activity protected by the FMLA, or ADA, that her termination was caused by such activity (even if it occurred), or that Flores'

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

termination was pretext. DISH is entitled to summary judgment.

## I. NO EVIDENCE ESTABLISHING FLORES' CLAIMS

To distract from her lack of evidence supporting her claims, Flores weaves a tale of a hardworking Hispanic woman who financially supports her mother and siblings. An individual who is "shy, quiet, and unassuming," who "press[es] on in the face of adversity," and who rarely asks for help. *See* Doc. 54, at 2-3. These facts are immaterial because none pertain to the elements of the claims she asserts against DISH. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining materiality as facts that affect the outcome under the governing substantive law). Similarly immaterial are that Flores worked overtime or was a "good employee" (if an employee with an established track record of attendance problems is a "good employee"), or that she "forced herself to work through the pain." See Doc. 54, at 3.

What is material – and not disputed – are facts demonstrating DISH's entitlement to summary judgment. Flores was an at-will employee whose termination was initiated on December 18, 2018, after Flores accumulated 8.5 attendance points triggering termination under DISH's attendance policy, which was effectuated on December 21, 2018. Doc. 49, SOF 39, 40, and 43.[1] She had a UTI with which she was diagnosed on December 14, 2018, that had resolved by December 31, 2018. Doc. 49, SOF 21 and 45. Whatever symptoms Flores may have had, those symptoms did not affect her ability to work, never bothered her enough that she felt like she needed to talk to her supervisor about it; and did not affect her ability to care for herself until after her termination. Doc. 49, SOF 19, 23-24, 28, 37 and 45. Flores never contacted DISH's human resources or leave departments, requested leave, or requested any accommodation. Doc. 49, SOF 13 and 42. Flores was terminated only after DISH confirmed Flores had no pending leave or accommodation requests. Doc. 49, SOF 40-42.

Summary judgment is required when, as here, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] An outcome of which she was warned in November, 2018. Doc. 49, SOF 35.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

(1986). Flores has failed to establish the elements of her claims, or any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A-B), *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) ("To show existence of a 'genuine' issue, [a plaintiff] must present some evidence establishing each element of their claims on which they would bear the burden of proof at trial.") Based on the evidence in this case, no reasonable jury could return a verdict for Flores on any of her claims against DISH. *See Liberty Lobby, Inc.*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" only if a reasonable jury could return a verdict for the non-moving party based on the evidence). DISH is, therefore, entitled to summary judgment.

## II. FLORES FAILS TO ESTABLISH FMLA INTERFERENCE

Flores fails to establish a *prima facie* case of FMLA interference because she fails to establish she was entitled to FMLA leave, that she provided DISH sufficient notice of her need to take leave; and that DISH denied her the FMLA benefits to which she was entitled. *See* 29 U.S.C. §2615(a); *see generally Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) (discussing interference claims). "The FMLA is not implicated and does not protect an employee against disciplinary action based upon absences if those absences are not taken for one of the reasons enumerated in the Act." *Bachelder*, 259 F.3d at 1125 (internal quote omitted).

First, Flores was not entitled to FMLA leave because she fails to establish she had a serious health condition during her employment at DISH. To be protected under the FMLA, an absence from work must be caused by a "serious health condition," defined as "an illness, injury, impairment or physical or mental condition" involving either: a) "inpatient care as defined in § 825.114;" or b) "continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113. The only "illness, injury, impairment or physical or mental condition" Flores had during her employment at DISH was a UTI with which she was diagnosed on December 13, 2018. Doc. 49, SOF 21, 26, and 45. Section 825.115 defines "continuing treatment" using five categories, and those catagories that could apply to Flores' condition require "incapacity for more than three consecutive days." *See* 29 C.F.R. §825.115

(a) through (e). Unquestionably, Flores received no inpatient care during her DISH employment. Equally clear is Flores fails to establish she was incapacitated "for more than three consecutive, full calendar days." *See* 29 C.F.R. §825.115(a) (defining incapacity as part of "continuing treatment").

Flores points to no evidence establishing she was incapacitated for more than three consecutive, full calendar days. Nor does Flores even represent in her Response that such incapacity existed.[2] She also presents no evidence beyond her subjective opinion that her condition was a serious medical condition. She provides no medical records indicating she was or needed to be off work because of her UTI or associated symptoms before her termination. Flores' failure to point to evidence is fatal to her FMLA claim. *See Nagy v. W. All. Bank,* No. 2:16-CV-2095 JCM (GWF), 2018 U.S. Dist. LEXIS 104731, at *11 (D. Nev. June 22, 2018) (holding plaintiff not entitled to FMLA leave where plaintiff was unable to produce evidence of an inability to work for more than three calendar days); *Nelson v. Fiskars Brands*, No. 3:14-cv-00685-SB, 2015 U.S. Dist. LEXIS 124328, at *36 (D. Or. July 10, 2015) (holding similarly); *Carter v. Rental Unif. Serv. of Culpeper, Inc.,* 977 F. Supp. 753, 760 (W.D. Va. 1997) ("As a matter of law, an illness that incapacitates an individual for only ... the two-day period the doctor advised [the employee] to take off from work, is not covered by the FMLA."); *see also Schaar v. Lehigh Valley Health Servs. Inc.*, 598 F.3d 156 (3rd Cir. 2010) (holding that some medical evidence is necessary to show that the incapacitation was "due to" the serious health condition.); *Culpepper v. BlueCross BlueShield of Tenn.*, 321 Fed. Appx. 491, 496–97 (6th Cir. 2009) (holding that the plaintiff's "own subjective testimony that she was too sore from surgery to work" could not establish her absences were covered by the FMLA); *Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 591 (7th Cir.2008) (holding that

---

[2] *See also*, Doc. 47-1, Exhibit 3, ¶9 (Flores affidavit asserting she was, at most, unable to work for three days); *see also Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) (A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (holding that no genuine issue exists when the only evidence presented is uncorroborated and self-serving testimony)

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-4-

some medical evidence is necessary to establish a serious health condition); *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1194-95 (8th Cir. 2000) (affirming judgment as a matter of law against an employee who provided no medical evidence showing he was incapacitated for more than three days).

Flores' hospitalization, which occurred over two weeks <u>after</u> her termination, does not retroactively bring her December 14 and 17 absences within FMLA coverage. There is no evidence that her cyst or infection, for which she was hospitalized in January, was caused by or connected to her UTI.[3] And, even if her December 2018 UTI was connected to her cyst or subsequent infection, Flores did not and could not have provided DISH adequate notice under the FMLA because, as she admits, at the time of her termination she did not know about either condition, or that she might be hospitalized in the future. Doc. 49, SOF 28, 46 and 48.

Second, Flores' FMLA interference claim fails because she did not notify DISH she was or would be absent "under circumstances which indicate the FMLA might apply." *Bachelder*, 259 F.3d at 1130. To survive summary judgment, Flores must prove she provided information sufficient to reasonably apprise DISH that her absences were due to a serious health condition. *See Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 U.S. Dist. LEXIS 173343, at *71-72 (D. Ariz. Oct. 9, 2018) ("When an employee requests leave under the FMLA, the employer must be made aware that the absence is due to a serious illness so that the employer can distinguish it from ordinary sick-days."). To be sufficient under the FMLA, the notice must be substantively adequate, timely, and consistent with the employer's proscribed procedure. *See* 29 C.F.R. §§ 825.302 and 303. Flores' notice failed in all three respects.

When Flores returned to work after calling off on December 14, 2018, "because she

---

[3] Flores presents no evidence connecting her UTI and any condition with which she was diagnosed or for which she was hospitalized after her termination. Her conclusory statement that her UTI was "likely related to the undiagnosed conditions" (Doc. 54, at 11) is sheer speculation. To avoid summary judgment, however, Flores must point to actual evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (requiring the non-moving party "come forward with specific facts showing that there is a genuine issue for trial.").

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-5-

wasn't feeling well," Flores told her supervisor she was "feeling better," and described no recent incapacity, did not share her UTI diagnosis, and never told Brown she believed any medical condition she had, or thought she had, would affect her ability to work, or that it might cause her to miss work. Doc. 49, SOF, 22-23. She worked two days without incident and then called off again, triggering her termination under the attendance policy. Doc. 49, SOF 22-25. When Brown submitted the termination paperwork on December 18, he knew only that Flores had been absent from work for two non-consecutive days – with no information reasonably adequate to indicate the absences were because of any illness or condition that might be covered by the FMLA. *See Nelson*, 2015 U.S. Dist. LEXIS 124328, at *36-37 ("In giving notice of intent to take FMLA leave, '[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.'") Even assuming her conversation with the attendance line was as Flores represents:

> [Flores] told the attendance line that she was unable to work, that she had missed work before because of her illness, that she believed that there was a problem with her kidney, that she was still in pain even though she had been on medication, and that she was going to the doctor again for more tests, and the doctor told her that she might be sent to the hospital.

(Doc. 55, CSOF 25), the information and rampant speculation was substantively deficient to put DISH on notice that either of Flores' two absences might be covered by the FMLA. Further, her presentation of medical records during her termination meeting did not substantively change the information DISH had. The records do not explain why Flores was absent, do not indicate her UTI necessitated she be off work at any time, and do not indicate she could not work or care for herself for more than three days because of her condition. See Doc. 49-3, Exhibits F and G. The information Flores provided DISH, even with the benefit of the records, was substantively insufficient to reasonably put DISH on notice she suffered a serious health condition. S*ee Lackey v. Jackson Cty.*, 104 F. App"x 483, 489 (6th Cir. 2004) (holding "ambiguous" doctors' notes which did not explain the reasons for plaintiff's absence from work or state that plaintiff was incapacitated could not prove that plaintiff suffered a serious health condition); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-6-

1995) ("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."). No reasonable juror could conclude Flores adequately notified DISH she was or would be absent under circumstances indicating the FMLA might apply. Her interference claim therefore fails. *See Nelson*, 2015 U.S. Dist. LEXIS 124328, at *38.

Additionally, to the extent Flores provided notice, it was untimely. When the need for leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." *See* 29 C.F.R. §303(a). In the two days following Flores' December 14, 2018, absence, she worked two full shifts, said she was feeling better, and did not indicate that her condition (to the extent she explained it at all) would affect her ability to work, or that it did or would necessitate leave. See Doc. 49, SOF 22-25. She was absent again on December 17, and again, made no attempt to notify Brown, or human resources (or even the attendance line representative) that her condition had or might incapacitate her or that it necessitated a leave from work. Even her medical records (which do not support the need for FMLA leave) were not provided until she was called into the meeting to terminate her employment a week after her first absence. Clearly, Flores did not provide notice "as soon as practicable under the circumstances." *See* 29 C.F.R. §303(a).

Flores also failed to "comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 CFR § 825.303(c). As explained in its Motion (Doc. 48), DISH used a dedicated leaves team to process leave requests and evaluate whether any absence was covered by the FMLA. Doc. 49, SOF 13-18. The leaves team was well advertised through trainings, posters, the employee portal, and leaves team contact cards distributed. Doc. 49, SOF 16. Flores does not contest the availability of the information, yet denies that she knew about the team or how to contact them. Doc. 54, at 16. She fails to cite any authority that her self-proclaimed ignorance negated her obligation to contact the leaves team. Even if she was truly ignorant of the leaves team, and that ignorance justified her not contacting them, she was not ignorant of the human resources department – which she never contacted either.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-7-

Flores fails to establish the elements of an FMLA interference claim and, therefore, DISH is entitled to summary judgment. None of the cases Flores cites hold differently. *See, e.g. Escriba v. Foster Poultry Farms, Inc*., 743 F.3d 1236, 1247 (9th Cir. 2014), (upholding verdict for employer and rejecting the plaintiff employee's assertion that "simply mentioning an FMLA-qualifying reason for an absence triggers the Act's protections."); *Nolan v. Hypercom Mfg. Res.,* 2001 U.S. Dist. LEXIS 14821 (D. Ariz. Mar. 22, 2001) (granting the employer summary judgment and holding as invalid regulations prohibiting an employer's retroactive designation of leave as FMLA leave); *Law v. Kinross Gold U.S.A., Inc.,* 651 F. App'x, 645 (9th Cir. 2016) (dismissing plaintiff employee's FMLA interference claim, but concluding that a four day hospital stay was sufficient incapacity under the FMLA).

Finally, even if the information Flores provided to DISH triggered its obligation to inquire further (which it did not), Flores would nevertheless have been terminated because her UTI was not a serious health condition under the FMLA. Had Flores sufficiently informed DISH to raise the possibility that her absences were covered by the FMLA, DISH would have <u>paused</u> the termination process pending a determination by the leaves department as to whether the absences were covered by the FMLA. Doc. 49, SOF 18 and 40. For the reasons set forth above, neither of the two absences were covered, the absences would have been counted, and Flores terminated. Consequently, DISH is entitled to summary judgment on Flores' FMLA interference claim.

### III.   FLORES FAILS TO ESTABLISH HER ADA CLAIMS

Flores' ADA claims are based on the faulty premise that Flores' alleged disability or supposed need for accommodation were known to DISH. Even if she was disabled and needed an accommodation, which DISH contests as set forth in its Motion (Doc. 48), Flores has not established that DISH knew when it terminated her employment on December 21, 2018, she was disabled or about any limitations her alleged disability purportedly caused.

In her Response, Flores outlines several "limitations" she claims establish she was disabled within the meaning of the ADA. However, the record is clear - <u>*she never told DISH about those limitations*</u>. Doc. 49, SOF 19, and 23. "Discrimination is about actual knowledge,

and real intent, not constructive knowledge and assumed intent." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11th Cir. 2005). The only thing DISH knew when it terminated Flores was that she had been absent for two non-consecutive days, and, to the extent any condition limited her, that condition had not affected her ability to perform her job and Flores did not share how it affected her outside of work. Flores did not tell her supervisor or human resources any information from which a reasonable person could conclude she was disabled or in need of an accommodation. Nothing she shared during her termination process altered that knowledge other than putting a name to a condition – a urinary tract infection. No reasonable employer would conclude that two non-consecutive absences – even if related - meant that Flores was disabled or that she needed any accommodation to perform her job. To the contrary, the known facts indicated Flores could fully perform her job, did perform her job, and was ready, willing, and able to continue doing so at the time of her termination. Doc. 49, SOF 19-28. Flores simply cannot establish that DISH knew of any alleged disability, or that, based on the limited information DISH had, Flores might need an accommodation.[4] Flores' ADA claims therefore fail.

To combat the lack of evidence supporting Flores' ADA claims, Flores would have the court conclude that an absence because of <u>any</u> medical condition or doctor's appointment automatically puts an employer on notice of a potential disability or need for an accommodation triggering an interactive process under the ADA. Doc. 54, at 12-13. Flores' assertion, for which she cites no authority, places an inordinate burden on an employer to investigate. Under Flores' theory, an employer's obligation to investigate the need for an accommodation would be triggered even when, as here, there is <u>no</u> indication that the employee is having any difficulty performing the essential functions of her job. The ADA simply does not require such onerous employer requirements. Instead, the ADA requires an employee provide information connecting the employee's limitations and the need for an

---

[4] Notably, Flores never states what accommodation DISH should have provided but did not. Flores clearly did not need leave as an accommodation because she was at work, ready and able to perform her job. Doc. 49, SOF 27.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-9-

accommodation. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), vacated on other grounds by *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (holding an employee has the initial duty of informing her employer of any limitations caused by a disability, and the need for an accommodation); *see also Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) (noting the employee must provide notice of the limiting condition and the causal connection to the accommodation sought.) Flores identified no limitations, and did not indicate she needed any accommodation to perform her job (including leave) because of such limitations. Flores' ADA claims are groundless and should be dismissed.

### IV. FLORES FAILS TO ESTABLISH RETALIATION OR PRETEXT

Flores points to no protected activity in which she engaged under the ADA or FMLA, and points to neither specific nor substantial evidence challenging the credibility of DISH's legitimate, non-discriminatory basis to terminate her employment. Flores, therefore, fails to establish her retaliation claims, or that DISH's actions were pretext. *See Coons v. Secy' of U.S. Dept. of Treasury,* 383 F.3d 879, 887 (9th Cir. 2004) (ADA); *Bachelder*, 259 F.3d at 1124 (FMLA).

In her Response, Flores argues that providing an employer information that should (at least in Flores' view) trigger an employer's obligation to investigate further is protected activity,[5] and cites no authority for her assertion. Flores correctly notes that requesting an accommodation can be protected activity under the ADA; however Flores did not make such a request. Flores never contacted human resources or the leaves team for any reason, and made no accommodation request to her supervisor. Even if providing sufficient information to trigger an employer's obligation to investigate is protected activity, as explained in DISH's Motion (Doc. 48) and in this reply, the limited information Flores shared with DISH was

---

[5] Requesting leave under the FMLA is not protected activity for purposes of a retaliation claim. *See Marquez*, 2018 U.S. Dist. LEXIS 173343, at *64-65 (distinguishing interference and retaliation under the FMLA). Additionally, Flores assertions that she "requested an accommodation in early December, 2018, and "requested a leave of absence on December 17, 2018" (Doc. 54, at 17) are unsupported legal assertions deserving no credence. *See Liberty Lobby, Inc.*, 477 U.S at 247-48.

substantively insufficient to put DISH on notice of any need for accommodation. Furthermore, to the extent the additional information Flores provided during her termination meeting on December 21, 2018, triggered DISH's obligation to inquire further, that "triggering" could not have motivated her termination because Flores' termination was initiated on December 18, 2018. Doc. 49, SOF 40.

Plaintiff also argues that DISH's reliance on the attendance policy to terminate her employment was pretext because, according to Flores, as applied to her, the policy counted covered absences and is thus evidence of discriminatory intent. To support this assertion, Flores cites cases discussing disparate impact claims – which Flores has never made – none of which hold that pretext may be established through a disparate impact analysis. *See generally, Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003); *Durante v. Qualcomm, Inc*., 144 F. App'x 603 (9th Cir. 2005), cited by Flores. Furthermore, the uncontested evidence is that DISH's leaves team is the sole arbiter of whether an absence was covered, and ADA and FMLA covered absences are not counted under the attendance policy. Doc. 49, SOF 6, 13-18 and 40. Moreover, as discussed in DISH's Motion (Doc. 48) and in this reply, Flores' absences were not covered by the FMLA or ADA. Flores pretext argument fails.

Flores also asserts that "[m]andating compliance with confusing, complicated, and inconsistent policies in order to receive the protection available under the FMLA and ADA is unreasonable and should be interpreted as discriminatory intent." Doc. 54, at 15. Nothing about DISH's policies were confusing, complicated, or inconsistent. Flores had three avenues to raise any potential need for leave or an accommodation: a supervisor, human resources, and the leaves team – she took advantage of none. Regardless of whether an employee raises a medical issue or need for leave with her supervisor or human resources, the employee is referred to DISH's leaves team. Doc. 49, SOF 14. That DISH funnels all potential accommodation and leave issues to a single group is not complicated or confusing, and is not inconsistent with the FMLA policy directing employees to human resources because human resources connects employees with the leaves team. *d*. Having a single group handle such evaluations results in a consistent processes and outcomes. Flores' contention of pretext is unfounded, and her

retaliation claims should be dismissed.

## V.    CONCLUSION

To avoid summary judgment, Flores had to point to evidence establishing her *prima facie* case for each claim she asserts against DISH. She has failed to do so. DISH is, therefore, entitled to summary judgment on all Flores' claims.

RESPECTFULLY SUBMITTED this 19th day of January, 2021.

*/s/ Misty Leslie*
Mark Ogden
Misty L. Leslie
LITTLER MENDELSON, P.C.
*Attorneys for Defendant*

I hereby certify that I electronically transmitted the attached document to the clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 19th day of January, 2021.

Troy P. Foster
THE FOSTER GROUP, PLLC
902 West McDowell Rd.
Phoenix, AZ 85007
tfoster@thefosterlaw.com
*Attorney for Flores*

*s/ Stephany Mitchell*

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600